UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20049-GAYLES

UNITED STATES OF AMERICA,

          Plaintiff,

vs.

RONALD ZAPETE,

          Defendant.

_____/

## SENTENCING MEMORANDUM AND REQUEST FOR VARIANCE

Ronald Zapete, through undersigned counsel, hereby submits the following Sentencing Memorandum to aid the Court in fashioning a sentence that is sufficient, but not greater than necessary, to achieve the ends of sentencing. As set forth below, the offense of conviction, Mr. Zapete's personal circumstances, and the need to avoid unwarranted sentencing disparities all militate in favor of a below-guidelines sentence in this case. As such, Mr. Zapete respectfully requests that the Court grant a downward variance, and impose a sentence of 37 months.

### A. OFFENSE CONDUCT

Mr. Zapete was arrested on January 29, 2024 and indicted on February 8, 2024, on (1) one count of Smuggling Goods from the United States, in violation of 18 U.S.C. § 554; and (2) one count of Delivery of a Firearm to a Common Carrier Without Written Notification, in violation of 18 U.S.C. § 922(e). (DE 7). As set out in the Presentence Investigation Report ("PSI" [DE 24]), Mr. Zapete was essentially charged

with surreptitiously sending firearms and ammunition in a package to the Dominican Republic.  The offense did not involve violence or threats, and no firearm was used or discharged.  The firearms were discovered by customs upon arrival in the Dominican Republic.

As soon as Mr. Zapete was arrested, he immediately cooperated with law enforcement.  He waived *Miranda*, agreed to speak with the agents, and fully admitted his involvement in the offense conduct at issue here.  [*See* DE 1 ¶¶10, 11]. After being indicted, he promptly accepted responsibility and pleaded guilty to the charges.

## B. ADVISORY SENTENCING GUIDELINES RANGE

Though Mr. Zapete does not contest the accuracy of the guidelines calculation in his case, that calculation dramatically overestimates the appropriate sentencing range given the specific facts here.  That is due, in part, to the fact that Mr. Zapete does not receive the two-level reduction under §4C1.1 for having no criminal history points, despite having no prior convictions.

Of course, the newly amended §4C1.1 has enumerated exceptions, one of which is that "the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense."  U.S.S.G. §4C1.1(7).  Thus, Mr. Zapete does not argue that there was an error in the guidelines calculation, which found him ineligible for this reduction based on the nature of the offense charged. Still, Mr. Zapete respectfully suggests to the Court that this portion of the Guidelines

should inform he Court's decision on the downward variance requested here.  That is because the animating logic behind this amendment—namely that people with zero criminal history points have a much lower risk of recidivism, including other offenders with a criminal history category of I—applies with equal force to someone like Mr. Zapete.  *See* Amendments to the Sentencing Guidelines, *U.S. Sentencing Commission,* https://www.ussc.gov/sites/ default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf (Apr. 27, 2023) at 77–78 (citing U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federaloffenders-released-2010).

Had Mr. Zapete received this two level reduction, his resulting Guidelines range would have been 37–46 months.  In addition to being more than sufficient punishment for a first-time offender like Mr. Zapete given the charges in this case, it is also much closer to—though still above—both the mean and median sentence for similarly situated defendants.  In fact, the PSI notes this in paragraph 85, under "Factors that May Warrant Departure and/or Variance."  [*See* DE 24 ¶85 (noting that, according to JSIN data, "[d]uring the last five fiscal years (FY2019-2023), there were 256 defendants whose primary guideline was § 2M5.2, with a Final Offense Level of 23 and a Criminal History Category of I, after excluding defendants who received a § 5K1.1 substantial assistance departure. For the 234 defendants (91%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 33 months and the median length of imprisonment imposed was 36

months.")].   Mr. Zapete therefore respectfully asks that the Court use the lower Guidelines range as a benchmark in determining the degree of the variance that might be appropriate here, and sentence him at the bottom that range, to 37 months.

### C. APPLICATION OF THE § 3553(a) FACTORS

The statutory factors that the Court must consider in determining what sentence would be sufficient, but not greater than necessary, in each case also weigh in favor of a downward variance for Mr. Zapete.  First, the nature of the offense and Mr. Zapete's personal characteristics warrant some relief from the calculated guidelines range.  No one disputes that the offense charged here is serious, or that affording adequate punishment for violating firearms laws serves an important deterrent function.  But this conduct is out of character for Mr. Zapete, and represents a serious lapse in judgment rather than a broader propensity for criminality.  Mr. Zapete's immediate, "super acceptance" of responsibility underscores that point.

Second, and relatedly, a 37-month sentence would reflect the seriousness of the offense conduct, provide adequate deterrence, and promote respect for the law.  Mr. Zapete has never been convicted of a crime before, and the requested sentence is more than sufficient deterrence from any future mistakes for someone with Mr. Zapete's record.  Mr. Zapete is part of a loving, supportive family, who anxiously await his return home.  *See* Ex. A; Ex. B (support letters, redacted for PII of minors and author's PII).  Even a 37-month sentence means significant time away from his loved ones in a federal prison; Mr. Zapete understands the significance of this lapse in judgment and has learned from it.

Third, Mr. Zapete's personal history and circumstances are also compelling. Despite the struggles he faced early in life and the absence of his mother for over a decade, Mr. Zapete has committed himself to being a present and doting father to his children. As explained in the attached letter, his oldest daughter has always looked up to Mr. Zapete, and speaks about how she admires his heart, his dedication, and the way he prioritizes his family. *See* Ex. C (redacted for minor child's PII). His daughter is leaving for college soon, and speaks about how much she needs her father's presence and support during this transition.



*Mr. Zapete, with his daughter as a child, and recently.*

Mr. Zapete's son, too, needs his father. As explained in Ms. Velasquez Perez's letter to the court, Mr. Zapete has always been a "hard-working, responsible father" to his son, and he remained close with Ms. Velasquez Perez even after their romantic relationship ended. *See* Ex. D (redacted for minor child's PII and author's PII). Mr.

Zapete's family also provided undersigned counsel with a copy of a recent "Behavioral Health Emergency Form" from May 2024, which provides further detail on the behavioral and developmental issues affecting Mr. Zapete's son that are noted in the PSI. [DE 24 ¶49]. That report, which was produced to document an "emergency psychiatric evaluation," details verbal threats of self-harm, attempting to jump off a second-floor staircase, and throwing things and spitting on staff. Mr. Zapete and his family know his son's behavior is getting worse, and, prior to his arrest, Mr. Zapete was in the process of arranging for his son to come live with him, so he could get the evaluations and treatment he needed for these issues. Mr. Zapete desperately wants to support his children and his family through this incredibly difficult time, and asks that the Court consider these unique personal circumstances in determining the appropriate sentence in this case.

Finally, as discussed in Section B above and as noted in the PSI, the requested variance would not create unwarranted sentencing disparities. In fact, according to the Sentencing Commission's Interactive Data Analyzer, the average sentence for offenders sentenced under §2M5.2 of the guidelines (in the 877 cases reported to the Commission for fiscal years 2015 to 2021) was 28 months, even lower than the JSIN figures over the last five years that are cited in the PSI. *See* United States Sentencing Commission: Interactive Data Analyzer, https://ida.ussc.gov/analytics/saw.dll?Dashboard. Under either calculus, the variance requested here would not be disparately low; it is actually higher than the mean and median sentence under both data sets.

CONCLUSION

Mr. Zapete acknowledges the grave error in judgment he made in sending these firearms to the Dominican Republic, and he accepts that he is deserving of punishment for breaking the law.   But that punishment should appropriately penalize the conduct at issue in this case, and should take into account all of the relevant mitigation, including Mr. Zapete's immediate acceptance of responsibility and expressed remorse.   As both § 3553(a) and the Guidelines themselves acknowledge, the calculated sentencing range does not always properly weigh the specific nuances of an individual case, and must be considered in the broader context of the individual.  Only then can a Court impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing.]"  18 U.S.C. § 3553(a).

A sentence of 37 months incarceration satisfies that standard.  It is significant punishment for the offense conduct, but accounts for the particular circumstances of this case.  For all these reasons, Mr. Zapete asks that this Court grant him a variance, and sentence him to 37 months in prison.

Respectfully Submitted,

**HECTOR A. DOPICO**
**INTERIM FEDERAL PUBLIC DEFENDER**

By:    _/s/ Marisa Taney_
        Assistant Federal Public Defender
        Florida Bar No.: A5502943
        150 W Flagler Street, Suite 1700
        Miami, Florida 33130
        Tel: 305-530-7000
        marisa_taney@fd.org

7

## CERTIFICATE OF SERVICE

I HEREBY certify that on **June 21, 2024,** I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/ Marisa R. Taney*

8